IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELVIN R. CLARK, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:21-cv-61 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| MICHAEL CLARK, *et al.*, | ) | |
| | ) | |
| Respondents. | | |

**MEMORANDUM**

Pending before the Court[1] is the Respondents' Motion to Dismiss (ECF 8) the counseled Petition for a Writ of Habeas Corpus (ECF 1) filed by state prisoner Melvin R. Clark ("Petitioner") under 28 U.S.C. § 2254. For the reasons below, the Court will grant Respondents' Motion, deny each of his claims as time-barred and deny a certificate of appealability on all claims.[2]

**I.     Relevant Background**[3]

Petitioner was arrested in March 2008 in Washington County, Pennsylvania and charged with numerous crimes related to the molestation of his two minor adopted daughters, "AC" and "RC," and his (now former) wife's minor sister, "CS." Petitioner retained Attorney William F. Conway to represent him. His jury trial was held on March 9, 2009 through March 12, 2009.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents also asserts that Petitioner procedurally defaulted his claims and that they have no merit. (*See* ECF 8, 9.) The Court's disposition on timeliness makes it unnecessary for it to reach these additional issues.

[3] The parties electronically filed relevant parts of the state court record. Respondents have also submitted a hard copy of the Court of Common Pleas' file for Petitioner's criminal case, including the trial transcript.

1

Many witnesses testified at the trial, including AC, RC, and CS. In its Appellate Rule 1925(a) opinion issued after Petitioner filed a direct appeal, the trial court summarized their testimony as follows:

> [Petitioner] was charged with sexually assaulting three minor victims, his two adopted daughters [AC and RC] and the minor sister [CS] of their mother over a period of several years. [Petitioner] married [AC and RC's mother] in October of 2001. [Trial Tr. at p. 146.] Thereafter, [Petitioner] began to sexually molest his adopted daughter, AC, in June of 2002, when she was 11 years old. It began with the [Petitioner] sexually touching the victim and progressed to digital penetration of her vagina and oral sex. [*Id.* at pp. 20-39]. This continued from age 11 until the victim was 18 when she finally disclosed [Petitioner's actions] to her mother. [*Id.* at pp. 39-40.] The sexual abuse by [Petitioner] of his youngest adopted daughter [RC] was occurring simultaneously, beginning when RC was 14 until she was 16. As with [AC], the assault began with sexual touching of her breasts and progressed to the victim's vagina. [*Id.* at pp. 83-101.]
> 
> [Petitioner's] sister-in-law, CS, testified that [Petitioner] sexually assaulted her beginning at age 15, including an incident when [Petitioner] sexually assaulted both her and victim AC at the same time, which AC corroborated. [*Id.* at pp. 120-34.]

(Resp's Ex. B, ECF 20-1 at pp. 4-6.)

The Commonwealth introduced at trial several incriminating voice mail recordings made by Petitioner to his wife on December 11, 2007, soon after AC first reported that he had been abusing her for several years. (Trial Tr. at pp. 170-79.) These voice mails were as follows:

> 2:58 p.m.:
> 
> Please talk to me, Honey. Please. Please call me and talk to me. I know I hurt you so bad and I hurt the girls. Please help me, Honey. I need you in my life. I love you more than anything in this world. I don't know why I did what I did. Please call me. Please I gotta…talk to you. I love you with all my heart.
> 
> 3:55 p.m.:
> 
> Hey, Honey, (indiscernible). Can you please, please stop and see me so we can talk…. I'll do anything just give me (indiscernible). If you want me to go to jail, I'll go to jail as long as we can stay a family. Please, Dear, don't make me go to the last resort that I have. I know sorry isn't good enough and the only thing is (indiscernible). Please call me. Please come and see me. I love you with all my heart. I haven't slept; I haven't done anything but try and I know it's all my fault. I

don't know what's the matter with me, but I know I need you and the kids. I love you with all my heart. Please. Please come and see me. I love you. Please.

5:21 p.m.:

(Indiscernible.) I'm not going to hurt you guys. Why? Why are you doing this to me? I know I hurt you and I know you can put me in jail for calling you. I'll give you anything you want, just talk to me. Please. That's all I want, Honey. That's all I want. I know I've done some mean, terrible things. I love you with all me heart. Please give me another chance. Please. Please. I love you so much. I was so (indiscernible). You'll never hear from me again. I couldn't find them shells for your gun (indiscernible). I'll find another one. I love you. Please call me. Please. I love you with all my heart. Bye.

5:35 p.m.:

Honey, you can use this for the PFA if you want. I really don't care. If I go to jail, I go to jail. My li[f]e is over with, Honey, and I'm losing my family anyway. I need you to let me know what you're actually looking for. I mean, you can have whatever. All I want is to be a family. I know I've done terrible wrong things. I mean, I understand. I love you with all my heart. Why can't you give me another chance? I love you. I won't harass you. I just want to let you know how much I really do love you. If I have to go to jail, then I'll go to jail. Whatever it takes is what I'll do. All I want is you and the kids. I'm sorry for the evil things I did. That with [AC] was over a year and a half ago. And…[RC] was goofing around and I'm sorry for it.

(*Id.* at pp. 173-78).

The Commonwealth also introduced several incriminating letters written by Petitioner to members of his family. (*Id.* at pp. 200-03.) In one letter to "My Family," Petitioner wrote: "Once again I tore up our family. I don't know why I do some things. I have hurt the three most special women in my life. Words, praying to God won't ease the pain. I know without you three I have no life. I know killing myself won't make things better, but I should go to Hell where I belong. My heart is broken because of what I have done and it can't be fixed." (*Id.* at pp. 201-02.) In another letter addressed to his wife, Petitioner wrote: "Look back and remember the good times we had and not the monster I have become…. I have so many things racing through my head I just can't write them down. Remember, it's all my fault." (*Id.* at p. 202.) Petitioner wrote to AC: "Don't ever

3

think what I did to myself is your fault. Remember what I always said, what goes around comes around. And know it's my turn. I know I have hurt you in ways words can't fix…. Remember, do the opposite of what I did." (*Id.* at p. 203.) To RC, he wrote: "I had a chance from God to change your life and I made it worse. I had all I ever wanted and I threw it all away without thinking…. Remember, none of this is your fault. Take care of the family. Daddy is very sorry for letting the monster inside him, get the best of him." (*Id.*)

Petitioner testified at trial that he did not sexually abuse AC, RC or CS. (*Id.* at pp. 269, 303-04.) He stated that in the voice mail he left on December 11, 2007 at 5:35 p.m. in which he apologized "for the evil things" he did to AC "a year and half ago," he was referring to when he would not let her go to a trip to France. (*Id.* at pp. 296-97.) He also stated that when he apologized to AC and RC in the letters, he was expressing his remorse for being so strict with them. (*Id.* at pp. 301-02.)

When asked what prompted him to write the above-quoted letters, Petitioner testified:

> I had been studying my bible, which anyone can tell you I constantly do. It took me back to the Book of Job and how he had lost his entire family through no fault of his own. He searched himself: Why, why did this happen to me. Everything seemed like I was in that same exact point where he [Job] had lost everything that he had lived for, to see his children grow, to see his children happy and everything.

(*Id.* at pp. 298-99.) Petitioner also explained why he referred to himself as a monster in one of the letters:

> In the Book of Job…it's actually chapter 7, verse 12—it explains—well Job is lost at this point, he had just lost all his family. He had 12 kids. He lost all of his possessions, everything that he had. He was hurting so bad he asked a question: "Am I a monster, the monster in me? Is this what I am? Did I do this?" That is what I was referring to when I wrote that because as I was writing these letters I had my Bible right there with me.

(*Id.* at p. 301.)

4

The jury found petition guilty of the following offenses: Rape by Forcible Compulsion, Felony 1; Rape by Threat of Forcible Compulsion, Felony 1; Rape of a Child, Felony 1; Sexual Assault (3 counts), Felony 2; Aggravated Indecent Assault, Felony 2; Aggravated Indecent Assault by Forcible Compulsion, Felony 2; Aggravated Indecent Assault of a Child, Felony 1; Aggravated Indecent Assault, person less than 16 years of age, Felony 2; Indecent Assault without consent (3 counts), Misdemeanor 2; Indecent Assault-person less than 13 years of age (3 counts), Misdemeanor 1; Statutory Sexual Assault (2 counts), Felony 2; Involuntary Deviate Sexual Intercourse by threat of forcible compulsion (2 counts), Felony 1; Involuntary Deviate Sexual Intercourse by forcible compulsion (2 counts), Felony 1; Involuntary Deviate Sexual Intercourse-person less than 16 years of age; Felony 1; Involuntary Deviate Sexual Intercourse with a child (2 counts), Felony 1; Endangering the welfare of children (3 counts), Misdemeanor 1; Corruption of Minors (3 counts) Misdemeanor 1; and Incest, Felony 1.

Before sentencing, Petitioner retained Attorney Stanley W. Greenfield to be represent him. On January 11, 2010, following a presentence investigation and assessment by the Pennsylvania Sexual Offenders Assessment Board, the trial court sentenced Petitioner to an aggregate term of imprisonment of not less than 56 years and not more than 112 years in a state correctional institution. The trial court also found Petitioner to be a Sexually Violent Predator and subject to a lifetime reporting requirement upon his release from incarceration.

Petitioner, through counsel (Attorney Greenfield), filed a direct appeal with the Superior Court of Pennsylvania, in which he raised the following four claims:

> I. The trial court erred in admitting evidence of Petitioner's 1983 summary conviction for retail theft, in contravention of Pennsylvania Rule of Evidence 403, during the cross-examination of Petitioner's character witness, Reverend Gary Schneider;

> II. The trial court erred in instructing the jury to consider the evidence of the 1983 summary conviction for retail theft as evidence "to help you determine the credibility and weight of the testimony given by [Petitioner] as a witness in this trial," since that conviction could only be used to determine a character witness's familiarity with Petitioner's reputation, not as potential impeachment evidence of Petitioner's himself;
>
> III. The trial court erred in excluding the expert testimony of Reverend Schneider, who was offered as an expert witness to explain the meaning of the Book of Job, and Job's lament to God "Why me? Am I this Monster, I don't deserve it"; and
>
> IV. The trial court erred in denying Petitioner's request for a factual hearing for a determination of whether his trial counsel, Attorney Conway, was ineffective in failing to properly object to the evidence and charges at issue in issues I, II and III.

(Pet's Ex. B, ECF 1-4 at pp. 4-5.)

On November 14, 2011, the Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Clark*, No. 1054 WDA 2010, slip op. at 3-4 (Pa. Super. Ct. Nov. 14, 2011) ("*Clark I*"). (*Id.* at pp. 2-12.) It denied the three claims of trial court error (Claims I, II and III) and dismissed Claim IV without prejudice to Petitioner raising claims of Attorney Conway's ineffective assistance in a PCRA proceeding. (*Id.* at pp. 5-12).

The Pennsylvania Supreme Court denied a petition for allowance of appeal on May 23, 2012. (Pet's Ex. B, ECF 1-4 at p. 13.) Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. Thus, his judgment of sentence became final under both state and federal law on August 21, 2012, when the 90-day period for him to file a petition for a writ of certiorari expired. 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A) and *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012).

On March 13, 2013, Petitioner filed, through counsel (Attorney Greenfield), a PCRA petition. (Resp's Ex. 4, ECF 9-4 at pp. 3-12.) The trial court, now the PCRA court, denied him

relief. (Pet's Ex. D, ECF 1-6 at pp. 2-8.) Petitioner then filed an appeal with the Superior Court in which he raised the following claim:

> The PCRA court erred in denying Petitioner's request for an evidentiary hearing for a determination as to whether his trial counsel provided ineffective assistance for failing to properly object to the jury charge instructing the jury to consider Petitioner's 1983 summary conviction for retail theft in evaluating his testimony at trial in which he denied his guilt.

(Resp's Ex. 6, ECF No. 9-1 at p. 4.)

On November 13, 2015, the Superior Court issued its decision affirming the dismissal of the PCRA petition in *Commonwealth v. Clark*, No. 177 WDA 2014, slip op. at p. 4 (Pa. Super. Ct. Nov. 13, 2015) ("*Clark II*")). (*Id.* at pp. 2-11.) It held that although Attorney Conway should have objected to the challenged jury instruction, Petitioner was not prejudiced because of the "overwhelming" evidence of his guilt, which included the "inculpatory statements to his wife and the victims." (*Id.* at p. 10); *see, e.g.*, *Buell v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied.")[4]

Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court following the Superior Court's decision in *Clark II*. (Resp's Ex. 7, ECF 9-7 at p. 5.)

---

[4] Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. Under *Strickland*, it is the petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. *Strickland* also requires that the petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on the petitioner to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel's errors must be so serious as to have "deprive[d] [the petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Petitioner filed, through new counsel, his Petition for a Writ of Habeas Corpus (ECF 1) with this Court on January 13, 2021. In his "Statement In Support of Habeas Corpus Relief" (ECF 1-1), which he attached to the Petition, he asserts that he "challenges the entire criminal prosecution beginning from his preliminary hearing up to an including his post conviction proceedings." (ECF 1-1 at p. 16.) In the section of that document entitled "Grounds for Seeking Habeas Corpus Relief," Petitioner lists the following six claims for relief:

1. he was "denied a fair trial contrary to the 6th and 14th Amendments of the U.S. Constitution;"

2. his "convictions were wrongful based upon either legal and or factual innocence;"

3. his "conviction and sentence is wrongful based upon cumulative error;"

4. his "trial counsel [Attorney Conway] and direct appeal counsel [Attorney Greenfield] provided him with ineffective assistance contrary to the 6th Amendment and 14th Amendment of the U.S. Constitution;"

5. his "post-conviction counsel was ineffective contrary to the 6th Amendment and 14th Amendment to the U.S. Constitution;" and

6. "The Pennsylvania court's adjudication of [his] various alleged harms involved an unreasonable application of clearly established federal law enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979)."

(ECF 1-1 at pp. 23-24.)

The Court notes that these grounds are too boilerplate to state a claim for habeas relief. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Merely asserting legal conclusions does not fulfill the requirements of Rule 2(c). As the Supreme Court explained in *Mayle v. Felix*, 545 U.S. 644, 649 (2005):

> In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground."

The Supreme Court also observed: "Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *Id.* at 656 (emphasis added). Thus, the broad, general grounds for relief listed above lack the required specificity to raise a valid habeas claim.

A review of Petitioner's 24-page "Statement in Support of Habeas Corpus Relief" indicates that he is asserting some or all of the same claims he raised to the Superior Court on direct appeal and in the PCRA proceeding as well as numerous claims that Attorney Conway and Attorney Greenfield were ineffective, including for failing to challenge a number of alleged errors made at trial and during sentencing. Petitioner asserts that Attorney Conway was ineffective as trial counsel:

- for failing to "investigate the case and ensure the presence of all defense witnesses at trial";
- "because he was disabled due to a drug addiction";
- for failing to ensure that "alibi evidence was presented at trial";
- for failing to "object to the jury hearing of PFA court orders which was akin to other crimes evidence;"
- for failing to seek the "recusal of the trial court judge who had presided over multiple proceedings involving the same parties and the same subject matter;"
- for failing "to seek a mistrial based the trial court's making comments upon the evidence;"
- for failing "to contest the various Court jury instructions" "which were tainted;"
- for failing to "to withdraw from the case" due to a conflict of interest;
- for failing to file "adequate pretrial motions" and,

9

- for failing "challenge Commonwealth witnesses by impeachment."[5]

(ECF 1-1 at pp. 16-24.)

Petitioner also asserts that Attorney Greenfield was ineffective in his role as sentencing, post-trial and direct appeal counsel failing to raise claims challenging:

- the trial court's ruling that he was Sexually Violent Predator;

- the term of the sentence imposed as excessive;

- the court's exclusion of alibi evidence;

- the alleged fact that jurors slept during the trial;

- the trial court's ruling that the rape shield statutes forbid the defense from impeaching witnesses; and,

- certain jury instructions as "tainted."

(*See id.*)

In their Motion to Dismiss (ECF 8), Respondents assert that the Court must dismiss the Petition because all of Petitioner's claims are time-barred under the applicable one-year statute of

---

[5] Petitioner also claims that Attorney Greenfield was ineffective for failing to raise these claims of trial counsel's ineffectiveness in the PCRA proceeding. A claim that PCRA counsel was ineffective is not cognizable under 28 U.S.C. § 2254. That is because Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, he cannot receive habeas relief on a claim that his PCRA counsel was ineffective, a fact codified by statute at 28 U.S.C. § 2254(i), which expressly provides: "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). Under *Martinez v. Ryan*, 566 U.S. 1 (2012), a petitioner's allegation that PCRA counsel was ineffective is relevant to whether defaulted claims of *trial counsel*'s ineffectiveness should be excused. As noted above, the Court need not address whether any of Petitioner's claims are defaulted (and, if so, whether the default should be excused under *Martinez*) because all of his claims are clearly time-barred under AEDPA's one-year statute of limitations.

10

limitations, which is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and codified at 28 U.S.C. § 2244(d). Petitioner concedes that he filed his habeas claims outside of AEDPA's one-year statute of limitations. He argues that he is entitled to equitable tolling and also that, in accordance with the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Court should excuse his failure to comply with AEDPA's limitations period because he is "actually innocent."

**II.     Discussion**

    A.  Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). AEDPA reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

AEDPA substantially revised the law governing federal habeas corpus. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

B. Petitioner's Claims are Time-barred

AEDPA's statute of limitations is codified at 28 U.S.C. § 2244(d) and it requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[6] AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d).

As discussed above, Petitioner's judgment of sentence became final on August 21, 2012. He filed the PCRA petition 204 days later, on March 13, 2013. In accordance with § 2244(d)(2), that first PCRA proceeding *statutorily* tolled AEDPA's limitations period beginning on March 13, 2013. Petitioner's PCRA proceeding remained pending through on or around Monday, December 14, 2015, which is the date the 30-day time period expired for him to file a petition for allowance of appeal from the Superior Court's November 13, 2015 decision in *Clark II*. *See*, *e.g.*, *Swartz v. Meyers*, 204 F.3d 417, 419-20 (3d Cir. 2000).

AEDPA's limitations period began to run again the next day, on December 15, 2015. Since 204 days had expired already from the limitations period, Petitioner had 161 more days—until on

---

[6] The date on which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004). Petitioner acknowledges that the statute of limitations for all claims he asserts in this habeas action began to run on the date his judgment of sentence became final in accordance with § 2244(d)(1)(A). (ECF 1-1 at p. 19.) He does not assert that any claim must be evaluated under paragraphs (B), (C) or (D) of § 2244(d)(1).

12

or around May 24, 2016—to file a timely federal habeas petition. He did not file his Petition until January 13, 2021, thereby making the claims he raised in the Petition untimely by approximately 1,695 days, or more than four years and seven months.

Petitioner acknowledges that he filed his claims outside of AEDPA's one-year statute of limitations, but contends that the limitations period should be equitably tolled. Equitable tolling would apply here only if Petitioner established that (1) he pursued his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631 (2010); *see, e.g.*, *Wallace v. Mahanoy*, 2 F.4th 133, 143-44 (3d Cir. 2021); *Ross v. Varano*, 712 F.3d 784, 798-804 (3d Cir. 2013); *United States v. Thomas*, 713 F.3d 165, 174-75 (3d Cir. 2013); *Munchinski v. Wilson*, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires showing *both* elements before we will permit tolling." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original)).

The Court of Appeals has explained:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. *Holland*, 130 S. Ct. at 2565…. A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. *See Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.") (emphasis added) (internal quotation marks and citation omitted); *see also Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." (emphasis added)).

*Ross*, 712 F.3d at 799. The Court of Appeals has further instructed that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," *Seitzinger v. Reading Hosp. & Medical Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." *Miller [v. New Jersey State Dept. of Corr.]*, 145 F.3d [616, 618 (3d Cir. 1998)].

13

*Sistrunk*, 674 F.3d at 190.

Petitioner has failed to establish that he is entitled to equitable tolling. No evidence supports a finding that he was diligent in filing his federal habeas claims and that extraordinary circumstances prevented him from raising them. His assertion that Attorney Greenfield abandoned him either during and/or after his PCRA proceeding has no legal or evidentiary support. Moreover, once his PCRA proceeding concluded, Petitioner still had 161 days (until on or around May 24, 2016) to file a timely *pro se* federal habeas petition with this Court. He does not explain why he did not do so, let alone direct the Court to any evidence that would establish that he is entitled to equitable tolling for the amount of time (1,695 days) that would be required to save his claims from being time-barred.

Petitioner also argues that in accordance with the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Court should excuse his failure to comply with AEDPA's limitations period because he is innocent. In *McQuiggin*, the Supreme Court recognized that the actual-innocence "gateway" to federal habeas review developed in *Schlup v. Delo*, 513 U.S. 298 (1995) for procedurally defaulted claims extends to cases in which a petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations.

In *Schlup*, the Supreme Court held that a viable claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." 513 U.S. at 324. "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Sistrunk*, 674 F.3d at 191 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

The Supreme Court's ruling in *McQuiggin* was "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." 569 U.S. at 392-93 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). It held that the "actual innocence" exception will apply only to a "severely confined category" of cases,*" id.* at 395, and instructed "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

In *Reeves v. Fayette SCI*, 897 F.3d 154, 160-61 (3d Cir. 2018), the Court of Appeals explained:

> To satisfy this standard, first, "a petitioner must present new, reliable evidence" and second, "show by a preponderance of the evidence 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,'" *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing and quoting *Schlup*, 513 U.S. at 324, 327, 115 S. Ct. 851), or stated differently, that it is "more likely than not any reasonable juror would have reasonable doubt," *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006).

It further explained:

> "[M]ere impeachment evidence is generally not sufficient to satisfy the [actual innocence gateway] standard." *Munchinski v. Wilson*, 694 F.3d 308, 338 (3d Cir. 2012). However, new, reliable evidence that "undermine[s] the [trial] evidence pointing to the identity of the [perpetrator] and the motive for the [crime]" can suffice to show actual innocence. *Goldblum v. Klem*, 510 F.3d 204, 233 (3d Cir. 2007); *see also Munchinski*, 694 F.3d at 336-37 (explaining that actual innocence was demonstrated where new evidence both showed that the crime could not have happened in the way the Commonwealth presented at trial and provided an alternative theory that was more appropriate and better fit the facts of the case). In weighing the evidence, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors"; the actual innocence standard "does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538, 126 S. Ct. 2064.
> 	The gateway actual innocence standard is "demanding" and satisfied only in the "rare" and "extraordinary" case where "a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial

15

<pre style="white-space: pre-wrap;">        unless the court is also satisfied that the trial was free of nonharmless constitutional
        error." *McQuiggin*, 569 U.S. at 386, 392, 401, 133 S. Ct. 1924 (internal quotation
        marks and citations omitted).</pre>

*Id.* at 161 (altered text added by court of appeals).

Petitioner has not produced new evidence of his innocence that provides a "gateway" through which the Court may consider his untimely federal habeas claims. As "new" evidence of his innocence, he relies on a 209-page printout of a daily planner that was not introduced at trial and which purportedly sets forth his delivery schedule for work from October 6, 2006 through October 6, 2008. (Pet's Ex. G, ECF 17).[7] Petitioner asserts generally that this document shows that he could not have committed the acts of abuse as testified by the victims. However, he does not cite to a specific page of this lengthy document to show how it supports his claim that he is factually innocent. The Court also notes that the victims did not testify as to specific dates the incidents of abuse occurred[8] and also that AC testified that Petitioner's abuse of her began in *June 2002*, years before the dates set forth in the daily planner. (Trial Tr. at pp. 21-22).

---

[7] The Court assumes for the purposes of this Memorandum only that the daily planner Petitioner produced as Exhibit G is authentic. *See Williams v. Woodford*, 384 F.3d 567, 590-91 (9th Cir. 2004) (expansion of the record under Pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts is a permissible step that may avoid the necessity of an expensive and time consuming evidentiary hearing); *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (Rule 7 "can be used to introduce new factual information into the record in lieu of an evidentiary hearing").

[8] For example, AC testified that Petitioner abused her approximately "twice a week…whenever he would be there without my mom being home." (Trial Tr. at p. 28.) AC explained that some of the abuse occurred during the summer, when she and her siblings were home alone while their mother was at work. AC stated that Petitioner, who was employed as a delivery driver, was able to stop by the house during the day on some occasions because he was making a delivery nearby. (*Id.* at p. 25.) Moreover, the trial court instructed the jury that "in all three indictments [the Commonwealth] allege[s] that the crimes were committed on a range of dates. You are not bound by the date alleged in the criminal information…. You may find the Defendant guilty if you are satisfied beyond a reasonable doubt that he committed the crimes charged in or around or on or about the dates charged in the criminal complaint, even though you are not satisfied that the Defendant committed it on the particular dates alleges in the complaint." (Trial Tr. at p. 386-87.)

Based on the foregoing, Petitioner has shown neither that an "extraordinary circumstance" stood in his way of filing his habeas claims within AEDPA's statute of limitations or that he acted with the required diligence sufficient to justify the amount of equitable tolling that would be required to save his claims from being time-barred. Nor has Petitioner demonstrated that this is one of the rare cases in which the actual innocence exception to the statute of limitations recognized by *McQuiggin* applies. Thus, his habeas claims are time-barred and the Court will deny them for that reason.

Finally, to the extent that Petitioner is also raising a freestanding actual innocence claim (in addition to his gateway actual innocence claim), that claim is denied. In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder*, 379 F.3d at 122 (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993));[9] *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007). However, the Court of Appeals has acknowledged that the Supreme Court has yet to definitely resolve the issue. *Reeves*, 897 F.3d at 160 n.4. The Court of Appeals has further explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [than a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)).

---

[9] In *Herrera*, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." 506 U.S. at 417.

Suffice it to say that if indeed a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, Petitioner has fallen short of offering the type of evidence of innocence that would entitle him to habeas relief on such a claim given that he has not satisfied the lesser (although still demanding) standard that applies to gateway actual innocence claims.

Accordingly, if Petitioner is raising a freestanding actual innocence claim it is denied.

### III.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied as untimely. Thus, a certificate of appealability is denied with respect to each claim.

## IV. Conclusion

For these reasons, the Court will grant Respondents' Motion to Dismiss (ECF 8), deny each of Petitioner's habeas claims as time-barred and deny a certificate of appealability with respect to each claim.

An appropriate Order follows.

Date:  November 19, 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge